UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

M-TECH CONSULTING, INC.

Appellant,

-v- 6:25-CV-348

JOSHUA P. DOXSTADER

Appellee

-and-

MARK W. SWIMELAR,

Trustee.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF DAVID G. GOLDBAS<br>Attorneys for Appellant<br>185 Genessee Street, Suite 905<br>Utica, NY 13501 | DAVID G. GOLDBAS, ESQ. |
| MAXSEN D. CHAMPION<br>Attorneys for Appellee<br>8578 E. Genessee St.<br>Fayetteville, NY 13066 | MAXSEN D. CHAMPION, ESQ. |
| OFFICE OF MARK W. SWIMELAR<br>Chapter 12 Trustee<br>250 S. Clinton Street, Suite 203<br>Syracuse, NY 13202 | MARK W. SWIMELAR, ESQ. |

DAVID N. HURD
United States District Judge

# DECISION and ORDER

## I. INTRODUCTION

This is a bankruptcy appeal and cross-appeal arises from an adversary proceeding filed by M-Tech Consulting ("M-Tech" or appellant") against Joshua P. Doxstader ("Doxstader" or "appellee"). Doxstader is a Chapter 12 debtor. On March 13, 2025, the Bankruptcy Court issued a Decision & Order in that adversary proceeding and entered a judgment awarding damages to the appellee but no award to the appellant. The appeal and cross-appeal now before this Court followed shortly thereafter. On November 13, 2025, having reviewed the parties' briefing, this Court remanded the matter back to the Bankruptcy Court for the sole purpose of conducting an evidentiary proceeding regarding the nature of the underlying oral contract between the parties, but reserved as to all other issues in anticipation of the record developed at that prescribed hearing. Dkt. No. 13. On March 12, 2026, the evidentiary hearing was conducted before the Bankruptcy Court, and the supplemental bankruptcy record was docketed thereafter. Dkt. No. 15. On April 9, 2026, this Court entered a scheduling order directing the parties to how to file any supplemental and responsive briefing to supplement the record as to the March 12th evidentiary hearing. Dkt. No. 16. On May 21, 2026, the appellant filed a brief that was untimely and will not be

considered.[1] Therefore, the Court now relies only on the bankruptcy record on appeal, the parties' respective appellate briefs, and the supplemental record docketed pursuant to this Court's Order. Dkt. Nos. 4, 7, 9, 11, 15.

## II. BACKGROUND

The action arises from an oral contract initiated in 2022 between the two parties for certain farming services. Around that time, M-Tech contracted with a non-party, Genera, in which M-Tech was to grow and harvest crops of miscanthus (the "Project") in Tennessee. M-Tech hired Doxstader to plant the miscanthus crops, but the crop failed.[2] As a result, M-Tech cancelled the contract with Genera and determined that their best path forward was to liquidate certain farm equipment (the "Equipment"), thereafter requesting that Doxstader transport certain Equipment[3], which remained in his possession and is now part of his bankruptcy estate, for the

---

[1] On April 9, 2026, the Court directed the parties to file any *supplemental* briefing by May 11, 2026 and any *responsive* briefing on May 25, 2026. Given that the sole brief was filed on May 21, 2026, no timely briefing was filed.

[2] As best as this Court can tell, the individual owners of M-Tech and Doxstader entered into an oral agreement in 2016 whereby Doxstader provided certain planting and/or harvesting services. M-Tech was then formed in 2022, thereafter contracting with Genera for the Project and soliciting Doxstader to perform planting services, etc. But precisely how this took place, aside from M-Tech soliciting Doxstader for continued services, is entirely unclear having reviewed the record.

[3] As stated The farming Equipment as issue in this matter is: (1) a 2018 Kubota tractor; (2) a 2017 Kubota tractor; (3) computerized controllers for four (4) Loxton miscanthus planters ("Planter Controllers"); (4) DH Farm Equipment Mobile Fuel Tank Trailer; (5) a 1000 gallon single wall fuel tank with fuel transfer pump; (6) one set of rollers; (7) one set of chisel plows; (8) a rotary forklift Attachment; (9) a gaylord box; (10) two wagons; (11) one Lifter; (12) a ramp; (13) and a rock bucket (collectively the "Equipment"). Dkt. No. 4. There is also a Gooseneck Trailer in dispute. *Id.*

purpose of selling it. At some point thereafter, Doxstader informed M-Tech that he would instead be withholding the Equipment until such time as he received payment from M-Tech for his services on the Project. The dispute that followed also pertains to certain storage costs and repair costs that Doxstader incurred as to the Equipment in his possession following the Project's failure. The parties also dispute the validity of certain invoicing submitted to M-Tech by Doxstader.

At some point thereafter, M-Tech filed a replevin action against Doxstader in New York Supreme Court, Oneida County to recover the Equipment. In June 2024, Doxstader filed a Chapter 12 Bankruptcy action, staying M-Tech's replevin action, in which he alleged that M-Tech owed him money and that he was storing certain property owned by M-Tech. Thereafter, M-Tech initiated the underlying Adversary Proceeding seeking: 1) an order vacating the stay Doxstader obtained; 2) the return of the Equipment; 3) an injunction preventing sale of the Equipment; and 4) damages. The Bankruptcy Court granted appellant's request for an injunction preventing the sale of Equipment but denied the request to vacate the stay.

Thereafter, discovery was conducted between the parties and a bench trial was held on January 15, 2025. On March 13, 2025, Chief U.S. Bankruptcy Judge Wendy A. Kinsella entered a Decision & Order awarding

appellee damages in the amount of $99,524.73 and finding that he held a possessory lien over the Equipment, thus making it part of his bankruptcy estate. Bankruptcy Record on Appeal, Dkt. Nos. 4, 6. Both parties now appeal. Dkt. Nos. 1, 2, 7, 9, 11. Briefly stated, appellant argues that: (1) Doxstader wrongfully kept possession of the Equipment through his fraudulent conduct; (2) the contract between M-Tech and Doxstader was unenforceable under New York's Statute of Frauds because the planting and harvesting of a miscanthus crop necessarily takes three years; (3) Doxstader was not entitled to recovery under the doctrine of part performance; (4) the contract was indefinite in nature and thus cannot be enforced; (5) Doxstader was not entitled to *any* lien as to the Equipment; (6) Doxstader was not entitled to *quantum meruit* relief; (7) Doxstader could not recover on an account stated; and (8) damages were awarded to Doxstader without sufficient evidence. Appellant's Brief, Dkt. No. 7.

Turning to Doxstader's cross-appeal, he argues the Bankruptcy Court erred by: (1) not directing the sale of Equipment as he requested; (2) not finding that he was entitled to storage fees as to the Equipment; (3) finding that he was only entitled to $30,000 in remaining payments under the contract; and (4) failing to award costs related to Equipment repairs that he made given that he provided the Bankruptcy Court with documentary evidence. Appellee's Brief, Dkt. No. 9. Doxstader now seeks an Order

directing the sale of all Equipment that he presently holds for auction as well as payment from M-Tech to recover storage fees, unpaid contractual fees, and the costs associated with tractor repair. *Id.*

The respective appeals have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **LEGAL STANDARD**

A federal district court enjoys jurisdiction to entertain appeals from "final judgments, orders, and decrees" issued by a bankruptcy court sitting in the same judicial district. 28 U.S.C. § 158(a). "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*." *In re Charter Commc'n, Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012). While the bankruptcy court's findings of fact are not conclusive on appeal, "the party that seeks to overturn them bears a heavy burden." *In re Metaldyne Corp.*, 421 B.R. 620, 624 (S.D.N.Y. 2009) (quoting *H & C Dev. Group, Inc. v. Miner (In re Miner),* 229 B.R. 561, 565 (2d Cir.1999)). Thus, "[t]he reviewing court must be left with a 'definite and firm conviction' that a mistake has been made. *Id.* (quoting *Ortega v. Duncan,* 333 F.3d 102, 107 (2d Cir.2003)) (cleaned up). Moreover, a district court reviews a bankruptcy court's discretionary decisions for abuse of discretion. *In re Tingling*, 990 F.3d 304, 307 & n.6 (2d Cir. 2021).

## III. **DISCUSSION**

**A. Housekeeping Matters**

As an initial housekeeping matter and having reviewed the parties' respective appeals, the Court reminds both parties that Federal Rule of Bankruptcy Procedure ("Rule") 8014, derived from Federal Rule of Appellate Procedure 28,[4] governs the contents of briefing in bankruptcy appeals. *See e.g. In re Regan*, 2022 WL 16744175, at * 2 (N.D.N.Y. Nov. 7, 2022); *see also Ehrlich ex rel. Hoffmans Trade Grp. v. Com. Factors of Atlanta*, 567 B.R. 684, 691 (N.D.N.Y. 2017). "On appeal to a district court from an order of a bankruptcy court, an appellant's opening brief must contain, *inter alia*, a jurisdictional statement, including citations to [applicable] statutory provisions, relevant facts, and "an assertion that the appeal is from a final judgment, order, or decree, or information establishing the district court's ... jurisdiction on another basis"; a statement of the issues presented, including a concise statement of the applicable standard of appellate review; a statement of the case, including relevant facts, procedural history, and the rulings presented for review with references to the record; and argument with citations to authorities. *In re Regan,* 2022 WL 16744175, at *2 (quoting

[4] As relevant here, "Rule 28(a)(8) of the Federal Rules of Appellate Procedure requires an appellant to cite to the relevant portions of the record on appeal to support [their] arguments. Failure to do so many result in the court treating [their] argument as waived. Grewal v. Cuneo Gilbert & LaDuca LLP, 803 F. App'x 457, 461 (2d Cir. 2020) (summary order) (citing Clark v. John Lamula Inv'rs, Inc., 583 F.2d 594, 602 (2d Cir. 1978) (determining that "this court need not search the record to discover whether such error indeed exists" where appellant failed to support their arguments by citation to the record).

FED. R. BANKR. P. 8014(a)). The "[f]ailure to comply with Rule 8014 provides adequate grounds for dismissal, and mere reference to previous filings, either from bankruptcy proceedings or the appellate process, is insufficient to satisfy the requirements of Rule 8014." *Id.* (citing *Ehrlich*, 567 B.R. at 691–92). Moreover, the parties' "failure to adequately brief an issue generally serves as a waiver of that issue." *Id.* (citing *Grant v. U.S. Dep't of Def. (In re Grant)*, 778 F. App'x 69, 70 (2d Cir. 2019) (summary order) (holding that an issue not raised on appeal, even where brought by a pro se bankruptcy appellant, is waived and that merely identifying issues is insufficient) (cleaned up).

Measured against this standard, neither party has met the standard of Rule 8014. Turning first to appellant's brief, the Court notes that it does not include any form of a jurisdictional statement as set forth *supra*. Dkt. No. 7. And while the brief does offer a discussion of the basis for their appeal on a point-by-point basis, it fails to present any statement of the issues presented or lay out any clear basis for appeal. Moreover, with respect to any of the arguments raised by the appellant, those arguments fail to set forth any applicable standards for appellate review because, while the brief identifies issues that appellant takes with the Bankruptcy Court's ruling, it seldom confronts the Court's factual findings or offers any legal standard to refute

the applicable law that the Bankruptcy Court relied upon in order to meet its burden on appeal. *Id.*

Turning next to the appellee's brief, it suffers from many of the same defects as the appellant's. Dkt. No. 9. Appellee's brief likewise fails to include any jurisdictional statement as to why this case is now before this Court on appeal. And while the brief organizes its discussion by presenting the four areas in where it finds that the Bankruptcy Court erred, the brief also fails to present any specific, non-conclusory issues for this Court to consider. Indeed, in many instances, the appellee's brief, not unlike the appellant's, reads far more like an airing of grievances than an appellate brief upon which this Court can review the Bankruptcy's Court's decision *de novo*. *See e.g.* Appellee's Brief at 4–6[5] ("The Bankruptcy Court decision creates a […] result which seems odd.") Finally, as with the appellant's brief, the appellee fails to set forth applicable standards for review in their brief. Merely stating what, in their view, *should* have been in the Bankruptcy Court's decision cannot carry the day here.

Therefore, upon review, both parties' briefing certainly fails to satisfy Rule 8014 on multiple fronts, and their respective appeals will be dismissed. Nonetheless, given this Court's prior decision to remand the case for further

[5] Pagination corresponds to CM/ECF headers.

development record on the issue of the applicability of the Statute of Frauds, the Court will still entertain the parties' arguments in some detail, albeit largely to shed greater light on why the deficiencies in the briefing cause their motions to fail under Federal Rule of Bankruptcy 8014.

**B. Appellant's Motion**

Mindful of the standard established *supra*, and before engaging with each of appellant's eight claims set forth in their brief, the Court reiterates that appellant's arguments, which are far from a model of clarity, leave much room for greater detail as to why they take issue with either the Bankruptcy Court's conclusions of law or its finding fact. In other cases, where it appears that the appellant does take issue with the Court's factual findings, there are scant citations to the record, if any, to support those arguments.

In other cases, the Court finds the appellant has raised novel arguments that, in this Court's view, were not included in the Bankruptcy Record. Most notably, these arguments were absent from M-Tech's post-trial memorandum. The Court has addressed *infra* the instances where it found this to be the case and why those arguments cannot be permitted at this juncture as a matter of law.

1. <u>Doxstader's Wrongful Possession of Equipment</u>

First, appellant contends that the Bankruptcy Court erred in finding that the Equipment was properly part of Doxstader's bankruptcy estate.

Appellant's Brief at 18–20. Broadly stated, appellant contends that, of the Equipment, Doxstader was only permitted to possess two Kubota Tractors. *Id.* However, the appellant neither illustrates what legal missteps the Bankruptcy court may have made in reaching its decision nor any clear error the Court made in relying on the facts that it did. Rather, the appellant contends that "it is clear" that Doxstader obtained the Equipment by "larceny or by fraud" because he submitted "a knowingly false lien to gain estate control over non-debtor property" without explaining which theory actually applies to this action. *Id.* at 19.

But insofar as the appellant contends that the Bankruptcy Court erred in addressing the fact that Doxstader inflated a storage invoice to leverage getting payment for transportations costs he incurred or that he improperly took possession of certain "plant controllers[,]" the Court rejects this argument because the Bankruptcy Court clearly explained how they accounted for those issues in their ultimate ruling and the appellant has not presented any argument to even vaguely confront them. *See* Decision & Order, Dkt. No. 6-2 at 22–23 (accounting for Doxstader's overstated invoicing and improper taking of the plant controllers in its determination of damages). And most notably, the Court does find that the bankruptcy record fails to indicate that plaintiff ever raised these arguments regarding fraud or larceny by trick prior to bringing this appeal. *See* Bankruptcy Record on Appeal,

Dkt. No. 6. Any issues that are not raised in the trial court [are] deemed waived on appeal and are only addressed upon a showing that the trial court committed plain error. *See e.g. U.S. v. Vicente*, 6 F. App'x 109, 111–12 (2d Cir. 2001) (citing *U.S. v. Keppler*, 2 F.3d 21, 23 (2d Cir. 1993)). Nor does the Court find that plain error or manifest injustice is evident here. *Moore v. Goord*, 142 F. App'x 496, 498 (2d Cir. 2005) (summary order). Rather, this Court finds that the Bankruptcy Court's findings were sufficiently detailed in finding both that Doxstader had improperly taken the plant controllers and acted in bad faith where he admittedly attempted to overstate an invoice in order to leverage receiving payment for transportation costs he incurred as a result of his possession of the Equipment. Bankruptcy Decision & Order at 15. In this Court's view, while the Bankruptcy Court may not have accounted for these factors in a manner that was to appellant's liking, they clearly addressed them in reaching their ultimate conclusions. Accordingly, appellant's first claim will be rejected.

2. <u>Applicability of the Statute of Frauds</u>

"Every agreement, promise, or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking [...] [b]y its terms is *not* to be performed within one year from the making thereof or the performance of which is not to be completed before

the end of a lifetime. N.Y. GEN. OBLIG. LAW § 5-701(a)(1) (emphasis added). "The Statute of Frauds solely "applies to agreements which are, by express stipulation, not to be performed within a year." *Nickel v. Brenton*, 92 F.Supp.3d 38, 47 (N.D.N.Y. 2015) (cleaned up). However, the statute "does not apply to an agreement which appears by its terms to be capable of performance within the year; nor to cases in which the performance of the agreement depends upon a contingency which may or may not *happen* within the year." *Id.* (cleaned up).

Where a contract, "by its very terms or necessary construction, [is not intended] to endure for a longer period than a year," it is a valid agreement although it may continue on indefinitely. *Id.* at 47–48. (cleaned up). Further, "New York courts generally construe the statute of frauds narrowly, voiding only those oral contracts 'which by their very terms have absolutely no possibility in fact and law of full performance within one year.'" *Id.* at 48. (quoting *Kroshnyi v. U.S. Pack Courier Servs.,* 771 F.3d 93, 110 (2d Cir.2014) (cleaned up). Thus, wherever an agreement is found to be completed within one year, regardless of the manner or practicality of doing so, "[courts have] held the one-year provision of the Statute to be inapplicable, a writing unnecessary, and the agreement not barred." *Id.* at 48.

Having remanded this matter back to the Bankruptcy Court for additional testimony on this issue and following a review of the expanded

record, the appellant's argument will be rejected. The Court does not find that the Bankruptcy Court clearly erred in finding that the contract could have been completed in one year. While the record makes clear that harvesting a miscanthus crop would take well over a year, Doxstader testified that at the time the oral contract was formed, the understanding was that the parties would plant and that there would be a one-year contract. *See e.g.*, Evidentiary Hearing Transcript, Dkt. No. 15 at 32. Once one year had elapsed, the parties would "see where [they] were" based on how the crops performed. *Id.* Having reviewed the remand transcript in detail, the Court finds that the oral contract between the parties took a wait-and-see approach to the Project and that the initial agreement could have been completed within a year such that it did not run afoul of the Statute of Frauds. In light of this, the Court does not find that the Bankruptcy Court erred in finding that the contract could have been performed within one year. And as the lower court noted, "[a]s long as an agreement may be 'fairly and reasonably interpreted' such that it may be performed within a year, the statute of frauds will not act as a bar to enforcing it[.]" *See e.g., Cron v. Hargo Fabrics*, 91 N.Y. 2d 362, 366 (1998). Accordingly, this argument will be rejected.

3. Recovery under the Doctrine of Part Performance

Next, appellant argues that the doctrine of part performance cannot make the parties' contract enforceable because certain invoices appellant

received from the appellee contained charges that went unpaid and/or that had no relation to the contract at issue in this action. Appellant's Brief at 24–25. Rather, they contend that the invoices reflect "charges that [Doxstader] unilaterally included in his billing." *Id.* at 25. But the appellant's argument that Doxstader was not entitled to damages under the doctrine of part performance hinged on the conclusion that the oral contract between appellee and M-Tech was indeed barred under the Statute of Frauds. Where a contract is barred by the statute of frauds, that "statutory bar may be overcome, however, if the plaintiff can prove part performance sufficient both to evidence the existence of, and to obligate the other party to, an otherwise unlawful oral agreement." *Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp. Plc*, 150 F.3d 194, 196 (2d Cir. 1998) (internal citations omitted).

But given the Bankruptcy Court's finding that the Statute of Frauds does *not* serve as a bar to the contract at issue here for the reasons stated and affirmed *supra*, the Court finds the appellant's argument here to be moot because plaintiff need not overcome any "statutory bar" where the oral agreement was properly found by the Bankruptcy Court to not run afoul of the statute. Accordingly, this argument will be rejected.

4. <u>The Indefinite Nature of the Parties' Contract</u>

Next, the appellant argues that the contract between the parties "was indefinite as to its material terms and should never have" served as the basis for a damages award in Doxstader's favor. But as was the case with much of appellant's arguments regarding larceny by trick and fraud, the Court does not see where the appellant ever raised these arguments prior to bringing this appeal. *See e.g.*, Plaintiff's Post-Trial Memoradum, Dkt. No. 6-12 (showing no argument with respect to the indefinite nature of terms). Given both the absence of these arguments in the trial record and the Court's finding *supra* that the Statute of Frauds does not apply, this argument will be rejected.

5. <u>Doxstader's Entitlement to a Lien as to the Equipment</u>

Next, appellant argues Doxstader was never entitled to a possessory lien with respect to *any* of the Equipment. First, insofar as the Court found that Doxstader was entitled to an artisan's lien as to certain of the Equipment, appellant now contends that appellee never obtained clearly expressed consent to perform any repairs on the Equipment and there is no proof to show the costs associated with any of these repairs were reasonable. Similarly, in as much as Doxstader held a valid truckmen's lien, appellant contends that there is no proof to support that the relevant charges were

reasonable and that Doxstader never gave notice or warning to M-Tech as to the "potential for a public sale."

The Court does not identify any issues that the appellant takes with the applicable law used by the Bankruptcy Court. But with respect to their issues with the Bankruptcy's factual findings, the Appellant's arguments are entirely devoid of any citations to the record or evidence to substantiate their contentions. Therefore, their arguments on appeal amount to little more than bare conclusions and the Court will not scan the record to identify such error and plaintiff's claim will be rejected. *Clark*, 583 F.2d at 602. Plaintiff

6. Quantum Meruit Recovery

The next section of appellant's brief centers on why the remedy of *quantum meruit*, particularly with respect to a specific invoice Doxtader submitted to M-Tech, was unavailable where a contract is barred by the Statute of Frauds. Appellant's Brief at 30–32. For reasons unbeknownst to this Court, however, the brief also indicates that the "Bankruptcy Court made no allowance for *quantum meruit* recovery, and Appellant submits that that portion of the Decision was correct." Aside from the appellant's statement that the Decision was correct, it is entirely unclear to this Court from a review of appellant's brief what issue they intend to raise on appeal, let alone where in the record such an issue arises given there are no citations to any portion of the record in their brief. As best as this Court can tell, this

section instead reads as the appellant telling the Court that *quantum meruit* recovery was inapplicable here, and, accordingly, it was not applied. But having reviewed the Bankruptcy Court's decision, the Court fails to even find any mention of *quantum meruit*. Nonetheless, insofar as appellant sought reversal and/or to demonstrate any error by the Bankruptcy Court, that argument is not apparent to this Court and will be rejected.

7. Recovery on Account Stated

Next, and much like appellant's arguments with respect to *quantum* merit, M-Tech's arguments that Doxstader cannot recover on an account stated claim fail to set forth any basis for reversal. Confusingly, the appellant states that the Bankruptcy Court properly denied Doxstader's "third counterclaim" without setting forth any apparent basis for this Court's consideration as to this claim on appeal. Indeed, the Court did reject appellee's accounted stated counterclaims because Doxstader did not submit any invoices to support a finding that, *inter alia*, they performed contract work beyond the date of the last invoice submitted into the record that appellant consented to. Bankruptcy Decision at 18–19; s*ee infra*. But insofar as appellant sought reversal or to demonstrate error as to this, it will not be considered.

8. <u>Award of Damages Absent Sufficient Evidence</u>

Finally, appellant contends that the Bankruptcy Court erred by giving any weight to appellee's testimony in their decision despite plaintiff having demonstrated a lack of truthfulness in multiple ways. First, they contend that Doxstader previously filed for bankruptcy in 2020 but failed to disclose this until appellant sued him. Next, they contend he submitted invoices without any backup documentation and the invoices he submitted to the Bankruptcy Court similarly lacked documentation. Moreover, they argue that Doxstader took plaintiff's Equipment from Tennessee to another state using a pretextual purpose of storing it safely when less drastic means could have been used. *Id.* Further, M-Tech contends that Doxstader took their plant controllers and other Equipment without any permission. In appellant's view, while the Court took notice of Doxstader's dishonesty in their decision, they still erroneously credited his testimony as to what he was told by the now-deceased John Doxstader. In the face of this, the Court found that M-Tech's "amply" supported testimony in opposition should have carried the day and that "neither contract nor breach nor damages should have been found."

As a threshold matter, this Court has already found that the Bankruptcy Court properly concluded that the oral contract between the parties did not violate the statute of frauds. With respect to appellant's

arguments that the Court erred in finding that there was a breach of contract or that Doxstader was entitled to damages, appellant has offered nothing besides bare conclusions to support those assertions. Appellant has omitted any details or citations to the record to detail how the Bankruptcy Court failed to properly weigh the deficiencies they point to *supra* and merely stating that their testimony in opposition carried the day does not make it so. Accordingly, appellant's assertions that the Bankruptcy Court failed to give their testimony its proper due will be rejected.

**C. Doxstader's Cross-Appeal**

Doxstader has filed a cross-appeal. Appellee's Brief, Dkt. No. 9. Appellee contends that the Bankruptcy Court's decision erred by: (1) not directing Doxstader to proceed with the sale of the Equipment to satisfy the judgment against M-Tech; (2) finding that Doxstader was not entitled to storage fees; (3) in finding that appellee was entitled to contractual payments beyond October of 2023; and 4) finding that Doxstader was not entitled to costs associated with repairing certain Equipment. *Id.* at 4–12.

Before engaging in appellee's arguments, the Court notes that the movant has offered no legal authority in their brief. And much like the appellant, they have offered few citations to the record to demonstrate how the Bankruptcy court erred in reaching their ultimate conclusions. Thus, mindful of the high bar that must be met to find factual error in the

Bankruptcy Court's decision and measured against the Rule 8014 discussed *supra*, the Court nonetheless address each of appellant's arguments in turn.

1. <u>The Sale of Equipment by Appellee</u>

Appellee contends that the Bankruptcy Court "erred in not [terminating the automatic stay] and directing the sale of plaintiff's equipment." Appellee's Brief at 4. In appellee's view, in light of the Bankruptcy Court's judgment giving appellee a secured claim in all of the Equipment that he holds, the Bankruptcy Court should have provided for the sale of the equipment, the payment of any superior liens, the satisfaction of appellee's entire judgment, and the return of any excess proceeds to the appellant. *Id.* at 5. Instead, Doxstader contends the "decision creates a situation where the appellee may exercise its lien rights on property held by Appellee, but then must enforce its judgment against an out of state judgment debtor, a result which seems odd." *Id.*

In this Court's view, while appellee may find the result "odd," he has presented no legal arguments to refute the Bankruptcy Court's decision nor demonstrated any clear error in how that Court reached its factual conclusions. *Id.* And while Doxstader asserts he has refrained from taking any action, *i.e.* exercising his lien rights, because he believes a "far more efficient resolution to this matter" exists in the event that this Court grants his appeal, he has presented no legal basis as to why this belief warrants

overturning the Bankruptcy Court's decision. Moreover, the Bankruptcy Court properly concluded that the decision to terminate the automatic stay in order was within its discretion. Bankruptcy Decision & Order at 23–24; *see In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91 (2d Cir. 2003) (citing *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990) ("The decision to lift an automatic stay is left to the discretion of the bankruptcy court, and this Court will only review that decision for abuse of discretion.") The Bankruptcy Court found that terminating the automatic stay and directing the turnover of the Equipment would extinguish the liens held by Doxstader. Bankruptcy Decision & Order at 24. While Doxstader contends that there are no superior liens to jeopardize his possessory interest in the equipment, he offered no evidence in his brief to support that assertion. Appellee's Brief at 5–6. Absent any other argument to show that the decision constitutes an abuse of discretion, the Court sees no reason to disturb the Bankruptcy Court's conclusion. Accordingly, the appellee's request to direct the sale of the Equipment will be denied.

2. <u>Doxstader's Entitlement to Storage and Insurance Fees</u>

Next, defendant requests that he be granted another year of insurance expenses for additional costs he has incurred insuring the Equipment that remains in his possession as well as expenses associated with storing the equipment. Appelle's Brief at 7–9. But the appellee's brief offers no

indication as to how the Bankruptcy Court erred here. *Id.* Nonetheless, appellee contends that he submitted an invoice to appellant for storage costs and that he testified at trial that he had to insure the equipment to protect both parties from loss. *Id.* at 7. However, appellee presented only one invoice at trial indicating he had incurred $6,000 in insurance costs related to the equipment. Moreover, in determining appellee's entitlement to storage costs, the Bankruptcy Court accounted for Doxstader's testimony that he fabricated storage invoicing to leverage payment from the appellant. Moreover, the Bankruptcy Court factor Doxstader's improper removal of certain Equipment, *i.e.*, the plant controllers, to appellant's detriment. Taking these factors into account, the Court does not find that the Bankruptcy Court abused its discretion, and appellee has advanced no arguments to suggest otherwise. Accordingly, appellee's request for reconsideration of his storage and insurance recovery amounts will be rejected.

3. <u>Doxstader's Entitlement to Additional Contract Payments</u>

Next, appellee contends that the Court erred in finding that he was not entitled to contractual payments beyond October of 2023. In support, appellant points to testimony that he was obtaining equipment for M-Tech as late as November of 2023 and was never notified by the appellant that the contract was terminated. But confusingly, appellee also admits that he

testified to having "not [been] instructed that the contract had terminated 'until late October.'" In sum, plaintiff argues that he was entitled to $50,000 for contractual services performed from "at least" June of 2023 through October of 2023, and that the Court erred by only awarding him $30,000. *Id.* at 10. Accordingly, he now seeks the remaining $20,000. *Id.* But again, plaintiff only states in conclusory fashion that the Court erred without confronting the Court's rationale in reaching their conclusion. *Id.* Further, the Bankruptcy Court found, and this Court agrees, that there was no showing that appellee provided additional contract services related to the Project beyond early October. Appellee's Ex. 1, Dkt. No. 6-10. Accordingly, this request will be rejected.

4. Doxstader's Entitlement to Additional Repair Costs

Finally, appellee contends that the Court "failed to award any costs associated with the repair of [a] disc" that is part of the Equipment at issue in this matter. Appellant's Brief at 10–12. And appellee asserts, without any citation to the record, that "[b]oth parties confirmed that the discs were" repaired. *Id.* at 11. Given that these were actual costs incurred by the appellee, he contends that the Bannkruptcy Court erred in failing to award these damages to appellee. As a threshold matter, appellee's sole citation to the record is to testimony that he obtained a quote for the repairs. *Id.* In light of this, the Court cannot find that appellee has met his heavy burden of

demonstrating that the Bankruptcy Court erred in finding that he was not entitled to additional repair costs. Nor does anything in the record supplant the Bankruptcy Court's finding that when appellee invoiced appellant for repair costs, the request was premised on an estimate rather than any incurred costs and thus, the request was properly found to not be recoverable and denied.

## IV. <u>CONCLUSION</u>

For the reasons discussed *supra*, the parties' briefing in this matter fails to comport with Rule 8014. Neither party included a proper jurisdictional statement as is required by that rule, nor did either provide a workable statement of the issues appropriately setting forth: (1) the issues on appeal, (2) how, beyond bare conclusions, that the Bankruptcy Court erred, and (3) sufficient citations to either the record or the relevant law to warrant reversal of the Bankruptcy Court's decision. Put differently, the parties failed to meet the necessarily heavy burden on appeal to overturn the Bankruptcy Court's findings. Accordingly, both the appeal and cross-appeal will be dismissed, and the Bankruptcy Court's decision will be affirmed in its entirety.

Therefore, it is

ORDERED that

1. Appellant's motion (Dkt. No. 1) is DENIED; and

2. Cross-Appellant's motion (Dkt. No. 2) is DENIED;

3. The Bankruptcy Court's March 13, 2025 Decision & Order is affirmed; and

4. The parties' respective appeals are dismissed.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: October 21, 2026
Utica, New York.